```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: March 17, 2016
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

               Plaintiff,

  -against-

DWIGHT MUNDLE,

               Defendant.

No. 15-cr-315 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

      Defendant Dwight Mundle is charged in a two-count Superseding Indictment (the "Indictment") with (i) transmitting a threatening communication in interstate commerce, in violation of Section 875(c) of Title 18 of the United States Code ("Count One") and (ii) using, carrying, and possessing a firearm during and in relation to this "crime of violence" in violation of Section 924(c) of Title 18 of the United States Code ("Count Two"). Before this Court are the Government's motions *in limine*, which seek the following:

(i)     The admission of evidence of the Defendant's actions toward his mother in the period immediately before and after the January 23, 2015 phone call (the "January 2015 Incident"), as direct evidence of the charged crimes;

(ii)    The admission of evidence of the Defendant's prior threats, verbal assaults, and physical assaults against his sister, Anika Mundle, and his mother, Sonia Green, to prove the Defendant's knowledge, intent, and absence of mistake, pursuant to Federal Rule of Evidence 404(b);

(iii)   The admission of evidence of the Defendant's prior conviction and incarceration, as proof of the Defendant's knowledge and intent regarding the threatening communication, as direct evidence, or, alternatively, pursuant to Federal Rule of Evidence 404(b); and

(iv)   The admission of certain excited utterances made by Anika Mundle and Sonia Green, pursuant to Federal Rule of Evidence 803(2).

For the reasons set forth below, the Government's motions are GRANTED in part and DENIED

in part.

## DISCUSSION

### I.     Motion *in Limine* Standard

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176–77 (S.D.N.Y. 2008) (citing *Luce v. United States*, 469 U.S. 38, 41 n. 4, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984)). An *in limine* motion is intended "'to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.'" *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (quoting *Banque Hypothecaire Du Canton De Geneve v. Union Mines*, 652 F. Supp. 1400, 1401 (D. Md. 1987)). "Because a ruling on a motion *in limine* is 'subject to change as the case unfolds,' this ruling constitutes a preliminary determination in preparation for trial." *United States v. Perez*, No. 09-cr-1153 (MEA), 2011 WL 1431985, at *1 (S.D.N.Y. Apr. 12, 2011) (quoting *Palmieri*, 88 F.3d at 139 (quoting *Luce*, 469 U.S. at 41, 105 S. Ct. at 163)).

The Court looks to Rules 401, 402, and 403 of the Federal Rules of Evidence to determine whether the contested evidence is admissible at trial. Under Rule 402, only relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence . . . and the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence may still be excluded by the Court "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Though the

"standard of relevance established by the Federal Rules of Evidence is not high," *United States v. Southland Corp.*, 760 F.2d 1366, 1375 (2d Cir. 1985), the Court has "broad discretion to balance probative value against possible prejudice" under Rule 403. *United States v. Bermudez*, 529 F.3d 158, 161 (2d Cir. 2008) (citing *United States v. LaFlam*, 369 F.3d 153, 155 (2d Cir. 2004)).

## II.     Events Surrounding the January 2015 Incident

The Government seeks to introduce evidence at trial of the Defendant's course of conduct in the days leading up to, and the day after, the January 2015 Incident. (The Government's Memorandum of Law in Support of Its Motions *In Limine* ("Gov't Mot.") at 6.) The Government contends that such evidence is admissible as direct evidence because it is highly probative of the Defendant's intent to communicate a "true threat" and is "inextricably intertwined" with evidence relating to the charged offenses. (*Id.*) The Defendant argues that the probative value of any such evidence is substantially outweighed by the risk of unfair prejudice. (Defendant's Memorandum of Law in Opposition to the Government's Motions *In Limini* ("Def.'s Opp.") at 4–5.)

"To be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency." *United States v. Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997). The Second Circuit is clear that "'[t]he trial court may admit evidence that does not directly establish an element of the offense charged, in order to provide background for the events alleged in the indictment. Background evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed.'" *United States v. Coonan*, 938 F.2d 1553, 1561 (2d Cir. 1991) (quoting *United States v. Daly,* 842 F.2d 1380, 1388 (2d Cir. 1988)). Furthermore, such evidence is admissible

3

as direct evidence, rather than as other bad acts evidence pursuant Rule 404(b) of the Federal

Rules of Evidence, when "'it ar[ises] out of the same transaction or series of transactions as the

charged offense, if it is inextricably intertwined with the evidence regarding the charged offense,

or if it is necessary to complete the story of the crime on trial.'" *United States v. Carboni*, 204

F.3d 39, 44 (2d Cir. 2000) (quoting *Gonzalez*, 110 F.3d at 942).

Count One requires the Government to establish beyond a reasonable doubt that the

Defendant threatened to "injure the person of another" (18 U.S.C. § 875(c)); such threat was

made in interstate commerce; and the defendant transmitted the threat "with knowledge that the

communication [would] be viewed as a threat." *Elonis v. United States*, 135 S. Ct. 2001, 2012

(2015). With respect to Count Two, the Government must establish beyond a reasonable doubt

that the Defendant "during and in relation to any crime of violence . . . for which the [Defendant]

may be prosecuted in a court of the United States, use[d] or carrie[d] a firearm, or . . . in

furtherance of any such crime, possesse[d] a firearm . . . ." 18 U.S.C. § 924(c). Here, the

offense charged in Count One constitutes a "crime of violence" because the "threatened use of

physical force" is an element of Count One. *Id.* at (c)(3)(A).

The Court finds that evidence concerning the Defendant's course of conduct in the days

immediately before and after the January 2015 Incident is admissible as direct evidence because

it provides crucial context to and is inextricably intertwined with the Defendant's charged

conduct. The Government asserts that in the days leading up to the January 2015 Incident, the

Defendant demanded money from his mother, Mrs. Green; showed his mother a gun kept in the

waistband of his pants; threatened to kill his mother or kill himself if she attempted to leave her

home in Florida; threatened to kill his sister, Anika, and his mother's husband, Mr. Green, if his

mother went to New York; told his mother that he had shot people in the past; punched a hole in

4

the wall; and defaced his mother's Florida home. (Gov't Mot. at 3.) Mrs. Green relayed these events over the phone to Mr. Green, who notified Anika. (*Id.*) Anika then called her brother (the Defendant), and it was during this call that the Defendant made the subject threat. (*Id.* at 3–4.) Subsequently, the Defendant continued to verbally assault and threaten his mother. (*Id.* at 4.) Absent an explanation that Anika was aware the Defendant was holding their mother hostage in the Florida home and had threatened her, the jury might be left with a misimpression as to why Anika telephoned the Defendant. More importantly, such evidence tends to demonstrate that the Defendant understood his call with Anika would be viewed as a legitimate threat because Anika was aware that the Defendant had a gun and had threatened to kill their mother. Finally, evidence regarding Mrs. Green's awareness of the Defendant's gun is inextricably intertwined with the Defendant's possession of a gun in conjunction with threatening Anika.

The Defendant argues that admitting evidence of the events surrounding the January 2015 Incident impermissibly puts the Defendant on trial for kidnapping his mother—an uncharged crime. (Def.'s Opp. at 5.) The Defendant cites no case law for this contention, and the Court is not persuaded that introduction of such evidence will inflame the jury to such a degree as to pile on charges for which the Defendant was not indicted. Indeed, courts routinely admit evidence of this nature to "g[i]ve coherence to the basic sequence of events." *Gonzalez*, 110 F.3d at 942. *See also United States v. Quinones*, 511 F.3d 289, 309 (2d Cir. 2007); *United States v. Inserra*, 34 F.3d 83, 89 (2d Cir. 1994) ("evidence of other bad acts may be admitted to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense"). Nor does the Court agree that the probative value of evidence of the Defendant's course of conduct is substantially outweighed by the risk of unfair prejudice. Where, as here, the uncharged conduct is part-and-parcel of the charged conduct and exclusion

of evidence concerning the uncharged conduct would create a "conceptual void in the story of the crime," admission of such evidence is appropriate.  Vol. 2, Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, § 404.20(2)(c) (2011).

III.    **Prior Threats**

The Government seeks to admit evidence that the Defendant threatened to kill and injure Anika and Mrs. Green on at least two occasions prior to the January 2015 Incident as evidence of the Defendant's knowledge, intent, and absence of mistake with respect to the conduct charged in Count One. (Gov't Mot. at 11.)  In particular, the Government asserts that in or about June 2004, when the Defendant was approximately 19 years old, he threatened Mrs. Green with a hot iron and subsequently threw the hot iron at Anika and punched her in the face multiple times when she attempted to protect Mrs. Green.  (*Id.*)  The Defendant then threatened to kill Anika and Mrs. Green with a knife or a gun (the "June 2004 Incident").  (*Id.*)  Anika and Mrs. Green reported the June 2004 Incident to the Mount Vernon Police Department, and, though a warrant was issued, the charges were ultimately dropped.  (*Id.*)  The Government also makes reference to another incident in or around August 2008.  (*Id.* at 12.)  At that time, the Defendant threatened to kill Anika, yelled at her, and pushed her (the "August 2008 Incident").  (*Id.*)  The August 2008 Incident was not reported to the police.  (*Id.*)

A. **Admission Under FRE 404(b)**

Courts engage in a three-part test to determine the admissibility of evidence under Rule 404(b).  *See Huddleston v. United States*, 485 U.S. 681, 688–91, 108 S. Ct. 1496, 1501–02, 99 L. Ed. 2d 771 (1988).  "First, the trial court must determine whether the evidence is offered for a proper purpose, namely, a purpose other than to prove the defendant's bad character or criminal propensity."  *United States v. Colon*, 880 F.2d 650, 656 (2d Cir. 1989).  Next, the court must

6

determine whether the proffered evidence is relevant under Rules 401 and 402. *Id.* Finally, "the government may introduce evidence of a defendant's prior crime . . . if the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice." *United States v. Zackson*, 12 F.3d 1178, 1182 (2d Cir. 1993) (citing *United States v. Gordon*, 987 F.2d 902, 908 (2d Cir. 1993)). The Second Circuit has adopted an "inclusionary approach to evaluating Rule 404(b) evidence." *United States v. Edwards*, 342 F.3d 168, 176 (2d Cir. 2003). However, "[t]his inclusionary approach does not invite the Government 'to offer, carte blanche, any prior acts of the defendant in the same category of crime.'" *United States v. Delva*, No. 12-cr-802 (KBF), 2014 WL 4460360, at *5 (S.D.N.Y. Sept. 10, 2014) (quoting *United States v. McCallum*, 584 F.3d 471, 475 (2d Cir. 2009) (quoting *United States v. Garcia*, 291 F.3d 127, 137 (2d Cir. 2002)).

     i.    **Proper Purpose**

Prior act evidence is admissible to demonstrate intent "[w]here a defendant claims that his conduct has an innocent explanation . . . ." *Zackson*, 12 F.3d at 1182. While "[e]vidence of other acts need not be identical to the charged conduct to show knowledge or intent pursuant to Rule 404(b)," *United States v. Cadet*, 664 F.3d 27, 32 (2d Cir. 2011), "[t]he government must identify a similarity or connection between the two acts that makes the prior act relevant to establishing knowledge of the current act." *Garcia*, 291 F.3d at 137. "Where intent to commit the crime charged is clearly at issue"—i.e., where it is an element of the crime—"evidence of prior similar acts may be introduced to prove that intent." *United States v. Caputo*, 808 F.2d 963, 968 (2d Cir. 1987). Here, because the Government must prove that the Defendant made a communication "with knowledge that the communication [would] be viewed as a threat," evidence offered to prove intent is proper. *Elonis v. United States*, 135 S. Ct. 2001, 2012 (2015).

ii.

ii.    **Relevancy**

As stated above, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence . . . and the fact is of consequence in determining the action." Fed. R. Evid. 401. "For uncharged crime evidence to be probative of knowledge and intent, '[t]he government must identify a similarity or connection between the two acts.'" *United States v. Paulino*, 445 F.3d 211, 223 (2d Cir. 2006) (quoting *Garcia*, 291 F.3d at 137 (collecting cases)).

As an initial matter, the Government does not even attempt to argue any "connection" between the June 2004 Incident, the August 2008 Incident, and the January 2015 Incident. Indeed, any possible connection is severely weakened by the passage of time between the incidents. *See Garcia*, 291 F.3d at 138 (finding district court abused its discretion in admitting conviction from 12 years prior to charged crime because "[t]he length of time between the events . . . detract[s] from any potential probative value").[1] Instead, the Government contends that evidence concerning the June 2004 Incident and August 2008 Incident is relevant because those incidents are sufficiently similar to the January 2015 Incident. (Gov't Mot. at 16.) In particular, the Government argues that in each instance the Defendant threatened to kill his sister and used a weapon and/or physical or verbal abuse. (*Id.*) Additionally, all three incidents took place in a domestic household, and two of the three incidents were reported to the police. (*Id.*) From this, the Government argues that the Defendant's past threats to kill Anika make it less likely that the January 2015 Incident was a mistake; the Defendant's awareness of Anika's fear following the

---

[1] The Court is aware that, in other cases, courts have concluded that a substantial time gap between the other acts and charged crime does not necessarily warrant exclusion of the other acts evidence. *See, e.g., United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 165–69 (S.D.N.Y. 2006). However, where, as here, the similarities between the other acts and charged crime are sparse, the passage of time only further diminishes the probative value of the other acts evidence.

June 2004 Incident and August 2008 Incident tends to show that Defendant believed Anika would view the January 2015 Incident as a true threat; and the Defendant's prior use of weapons tends to prove his use of a gun in connection with the January 2015 Incident was intentional. (*Id.*)

The Court is not persuaded that the supposed similarities the Government identifies between the earlier incidents and the January 2015 Incident make the June 2004 Incident and August 2008 Incident probative of intent. While each of the incidents involve the Defendant verbally threatening Anika, the meaningful connections stop there. There is no evidence that the threats all stem from the same dispute or related disputes. The Defendant used a different weapon in each instance. The police were only notified in one of the prior incidents (the June 2004 Incident). Additionally, the June 2004 Incident and August 2008 Incident were in-person altercations, whereas the threat related to the January 2015 Incident was made over the phone.

### iii.    Risk of Unfair Prejudice Substantially Outweighs Probative Value

Even if the Court were to determine that the June 2004 Incident and August 2008 Incident are marginally probative of the Defendant's intent, the Court nevertheless concludes that the probative value associated with admitting evidence of those incidents—even for the limited purpose of demonstrating the Defendant's knowledge, intent, or absence of mistake—is substantially outweighed by the risk of unfair prejudice. Unfair prejudice "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997) (citing 1 J. Weinstein, M. Berger, & J. McLaughlin, Weinstein's Evidence ¶ 403[03] (1996)). A court should not permit the introduction of other acts evidence when in actuality it is "propensity evidence in sheep's clothing." *McCallum*, 584 F.3d at 477.

9

Here, the Court is gravely concerned that the introduction of evidence concerning the June 2004 Incident and August 2008 Incident would unduly persuade the jury to conclude that the Defendant has a propensity to threaten Anika, and allowing Anika to testify that he threatened her on other occasions would improperly influence the jury to conclude that the Defendant must have threatened her in regards to the charged conduct. The Court will not permit the introduction of such propensity evidence. While the Government contends the purpose of the other acts evidence is to demonstrate the Defendant's knowledge, intent, and absence of mistake, the practical effect of admitting such evidence will prompt the jury to "generaliz[e] [the Defendant's] earlier bad act into bad character and tak[e] that as raising the odds that he did the later bad act now charged." *Old Chief*, 519 U.S. at 180.

Moreover, in light of the Court's *in limine* ruling permitting the introduction of evidence relating to the Defendant's course of conduct surrounding the January 2015 Incident, the Court finds that "there is sufficient other 'less prejudicial evidence that makes the same point.'" *United States v. Barret*, No. 10-cr-809 (S-3) (KAM), 2011 WL 6704862, at *13 (E.D.N.Y. Dec. 21, 2011) (quoting *United States v. Gotti*, 399 F. Supp. 2d 417, 419 (S.D.N.Y. 2005) (citing *Old Chief*, 519 U.S. at 182–83)). In other words, in light of the fact that the Court has made the determination to allow the introduction of evidence relating to the Defendant's threats against Mrs. Green, including brandishing a gun; threats to kill Anika and Mr. Green should Mrs. Green attempt to leave her home in Florida; Anika's knowledge that her mother was being held by her brother; and Anika's attempt to record a subsequent phone call with her brother, there exists less prejudicial evidence that is probative of the Defendant's knowledge that Anika would view the January 2015 Incident as a true threat (*i.e.*, intent).[2] Accordingly, the Court concludes that the

---

[2] As the Government itself asserts, both the evidence surrounding the January 2015 incident and evidence regarding prior threats arguably go towards establishing the Defendant's intent. (ECF No. 24 at 1, n. 1.) Having already

Government is prohibited from introducing evidence of the June 2004 Incident and August 2008 Incident at trial.[3]

## IV.   Prior Conviction and Incarceration

The Government seeks to admit evidence of the Defendant's plea allocution relating to his prior conviction and incarceration as evidence that the Defendant intended the January 2015 Incident to be construed as a true threat by Anika.  (Gov't Mot. at 17–21.)  The Defendant indicates in his opposition brief that he has no objection to the introduction of his plea allocution. (Def.'s Opp. at 9.)  The Court will permit the Government to introduce the Defendant's plea allocution for his prior conviction into evidence, accompanied by an appropriate limiting instruction.  The parties should submit to the Court a proposed limiting instruction(s) to accompany this evidence at the final pretrial conference scheduled for March 23, 2016 at 12:30 p.m.

---

determined that the Government may introduce evidence of the Defendant's conduct in the days leading up to and after the January 2015 Incident, which is probative of the Defendant's intent, the Court need not additionally permit the introduction of more inflammatory evidence that also may substantiate the Defendant's intent.  Furthermore, the Second Circuit's decision in *United States v. Jordan* does not compel this Court to permit the admission of such evidence.  2016 WL 890662 (2d Cir. Mar. 9, 2016).  In *Jordan*, the Second Circuit held that the defendant was not entitled to a new trial because the district court's incorrect instruction that the Government need not prove that the defendant intended his communication to be threatening was not plain error.  *Id.*  The Court reasoned that there was "overwhelming and essentially uncontroverted" evidence that the defendant knew his communications would be interpreted as threats: evidence regarding the defendant's abuse of the victim, particularly a "months-long campaign of terror and harassment of the victim and her family" and the defendant's own admissions on his website.  *Id.* at *3 (citation omitted).  Like the evidence regarding the defendant's "campaign of terror" in *Jordan*, evidence concerning the Defendant's conduct in the days leading up to and after the January 2015 incident establish intent.  As discussed *supra*, the Court is skeptical as to whether evidence of the Defendant's prior threats is indeed relevant, and, having determined that its probative value is substantially outweighed by the risk of unfair prejudice, declines to allow for its admission.

[3] Of course, a ruling on a motion *in limine* is not set in stone, and the Court may revisit this ruling at trial. Additionally, though the Government is precluded from introducing evidence of the prior threats in its case-in-chief, if the Defendant were to testify at trial that he had not previously threatened his family, the Government may seek to impeach him with evidence of previous threats.

## V.     Excited Utterances

The Government seeks to admit the following statements as exceptions to the general prohibition against hearsay:

(1) Anika's statements to Mr. Green immediately after the Defendant threatened to kill her ("Statement #1");

(2) Mrs. Green's statements on the phone to her brother while the Defendant was holding Mrs. Green against her will in her Florida home ("Statement #2"); and

(3) Mrs. Green's statements to her neighbor when she fled her Florida home ("Statement #3").  (Gov't Mot. at 21.)

The Government contends that each of the statements falls within the excited utterances exception to the hearsay rule.

Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c). While hearsay is generally inadmissible, the Federal Rules of Evidence provide certain exceptions for which it may be admissible.  *See* Fed. R. Evid. 803.  Under the "excited utterances" exception to the hearsay rule, "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused" may be admissible for the truth of the matter asserted.  Fed. R. Evid. 803(2).  The reliability of excited utterances, and therefore the reason for their admissibility, is premised upon the notion that "the declarant, in a state of excitement, is unlikely to muster the reflection necessary for fabrication."  *Brown v. Keane*, 355 F.3d 82, 90 (2d Cir. 2004).  Excited utterances "must rest on personal knowledge" to be admissible (*id.*); however, they "need not be contemporaneous with the startling event. . . ." *United States v. Tocco*, 135 F.3d 116, 127 (2d Cir. 1998).

Here, the Government argues that the evidence at trial will show that for Statement #'s 1–3, the declarant was in a "panicked" or "excited" state at the time the statements were made.

(Gov't Mot. at 23.) The Court reserves judgment on the admissibility of Statement #'s 1–3 subject to the Government laying the proper foundation for the introduction of those statements. Further, the Defendant has preserved his right to challenge the admissibility of those statements at trial.

## CONCLUSION

For the foregoing reasons, the Government's motions *in limine* are GRANTED in part and DENIED in part. In particular, evidence concerning the Defendant's course of conduct leading up to and immediately after the January 2015 Incident is admissible as direct evidence; evidence concerning the June 2004 Incident and August 2008 Incident is inadmissible; and the Government is permitted to introduce the Defendant's plea allocution related to his prior conviction into evidence. The Court reserves judgment with respect to the admissibility of Statement #'s 1–3.

Dated:   March 16, 2016                                     SO ORDERED:
         White Plains, New York

                                              _____
                                                    NELSON S. ROMÁN
                                                United States District Judge